UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GAYLE LACKER,

    Plaintiff,

    v.

LA WEIGHT LOSS CENTERS, INC., a Delaware corporation

    Defendant.

CASE NO. C05-0856JCC

ORDER

    This matter comes before the Court on Defendant LA Weight Loss Center's Motion to Dismiss Plaintiff's Amended Complaint's First, Second, Third, Fourth, and Sixth Causes of Action and to Strike Plaintiff's Attempt to Add Defendants. (Dkt. No. 8). Plaintiff does not oppose dismissal of the second and third causes of action. The Court has carefully considered the papers submitted by the parties and for the reasons set forth below, the Court hereby GRANTS Defendant's Motion to Dismiss and DECLINES to address Defendant's Motion to Strike at this time.

I.    BACKGROUND

    This action was brought under state law claims and was removed to this Court based on diversity jurisdiction. Gayle Lacker ("Plaintiff") brings this action against LA Weight Loss Centers, Inc. ("Defendant") alleging wrongful termination, retaliatory discharge, intentional infliction of emotional

ORDER – 1

distress, disability discrimination, failure to pay overtime, and outrage. Plaintiff's Amended Complaint alleges as follows:

On November 26, 2003, Plaintiff was hired by Defendant to work as an Assistant Manager in the Seattle area. Her income was $10.00 per hour, plus commissions ranging from one to two percent of revenue. She also received benefits and participated in Defendant's 401k plan. From January until May 2004, Plaintiff's sales were high, and she was transferred to various facilities to assist with sales.

In May 2004, Plaintiff was transferred to the Northgate facility where she worked 55-70 hours per week without breaks or lunch. In June 2004, Denise Johnson became Plaintiff's direct supervisor, and Plaintiff worked approximately 70 hours a week. In July 2004, Ms. Johnson made derogatory remarks regarding Plaintiff, and Plaintiff began experiencing stress and anxiety as a result of Ms. Johnson's threats that Plaintiff might lose her job if the facility's numbers did not meet expectations.

On August 5, 2004, Plaintiff experienced chest pains and became sick after attending a meeting. Plaintiff's doctor told her that she was probably suffering from anxiety and stress and prescribed Xanax. On August 6, 2004, Plaintiff experienced chest pain and tightness in her chest, and her symptoms became worse throughout the work day. She decided to take a one-hour lunch break in the afternoon when her absence would not cause coverage problems. While driving, Plaintiff received a phone call from Ms. Johnson, who yelled, "Where the hell are you?" Plaintiff explained that she was attempting to obtain treatment for job stress and anxiety attacks during her lunch break. Ms. Johnson told Plaintiff not to return to work without a doctor's note and then abruptly hung up the phone.

Plaintiff returned to work and left a message for Ms. Johnson, informing her that she would be obtaining a doctor's note regarding her medical condition. Plaintiff had another anxiety attack and went home early. Plaintiff called Ms. Johnson again and was told never to return to work and that the locks at the Northgate facility would be changed. Plaintiff asked Ms. Johnson about the doctor's note, and Ms. Johnson hung up the phone. Plaintiff did not return to work.

ORDER – 2

II.    ANALYSIS

In considering Defendant's motion pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only dismiss Plaintiff's claims if it appears beyond doubt that Plaintiff can prove no set of facts that support her claims and entitle her to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974). The Court must construe all factual allegations in favor of Plaintiff. *Id.* Conclusory allegations of law, however, will not defeat a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). The Court may dismiss a claim that either asserts a legal theory that is not cognizable as a matter of law or that fails to allege sufficient facts to support a cognizable legal claim. *See*, *e.g., SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 783 (9th Cir. 1996).

A.    *Discrimination and Wrongful Termination in Violation of the Washington Law Against Discrimination*

Plaintiff alleges that Defendant fired her because of a perceived disability, thereby violating Wash. Rev. Code § 49.60 et seq., the Washington Law Against Discrimination ("WLAD"). The allegation of a perceived disability is legally problematic, because a "perceived as" claim is only valid if the perceived condition is one that would qualify as a disability. *See, e.g., EEOC v. United Parcel Service, Inc.*, 306 F.3d 794, 803 (9th Cir. 2002); *Barnes v. Wash. Natural Gas Co.*, 591 P.2d 461 (Wash. Ct. App. 1979).

Generally, whether an employee is "handicapped" within the meaning of WLAD is a question of fact for the jury. However, the Court may decide this issue as a matter of law if there is only one conclusion reasonable minds could reach. *Fischer-McReynolds v. Quasim*, 6 P.3d 30 (Wash. Ct. App. 2000). It is appropriate for courts to look to the Human Rights Commission's definition of disability and to federal discrimination law when interpreting WLAD because WLAD does not define "disability," and Washington courts have not specifically addressed the issue of whether work-related stress and anxiety is a disability under the state statute. *See, e.g., Weyer v. Twentieth Century Fox, Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) (confirming the appropriate use of federal authority, in the absence of sufficient state authority, when interpreting Wash. Rev. Code § 49.60 et seq.); *Pulcino v. Fed. Express*

ORDER – 3

*Corp.*, 9 P.3d 787, 793 (Wash. 2000) (looking to the Washington State Human Rights Commission's definition of disability in the absence of WLAD's own definition).

*Snyder v. Medical Service Corp.*, 35 P.3d 1158 (Wash. 2001), is the only Washington case that addresses work-related stress, holding that a request for a new supervisor is not a reasonable request for accommodation under WLAD. *Snyder* does not determine whether work-related stress and anxiety fails to qualify as a disability as a matter of law, but does express skepticism in dicta, citing federal cases[1] which hold that supervisor-induced stress and anxiety does not entitle plaintiffs to relief under the Americans with Disabilities Act ("ADA"). The Human Rights Commission explains that "for enforcement purposes, a person will be considered to be disabled by a sensory, mental, or physical condition if he or she is discriminated against because of the condition and the condition is *abnormal*." Wash. Admin. Code § 162-22-02 (emphasis added). Courts have further defined a disability as an "abnormal" condition that "substantially limits" activity. *See, e.g. Toyota Motor Mfg., Ky., Inc., v. Williams,* 534 U.S. 184 (2002); *EEOC v. United Parcel Service* 306 F.3d 794 (9th Cir. 2002).

During the last month of her employment, Plaintiff experienced stress and anxiety attacks. On August 5, 2004, Plaintiff experienced chest pains and called her doctor. The doctor prescribed Xanax and said that she was "probably suffering from anxiety and stress." Amended Complaint ¶ 17. The next day, Plaintiff suffered from another anxiety attack and left work during her lunch break to seek medical attention. When Plaintiff's supervisor asked her where she was, Plaintiff admitted that she was seeking "treatment for job stress and anxiety attacks." Amended Complaint ¶ 19.  Based on these factual allegations and the foregoing definition of "disabled," Defendant could not have perceived Plaintiff as disabled. Work-related stress and anxiety is not a recognized disability, and Plaintiff fails to allege facts

---

[1]*Weiler v. Household Finance Corp.*, 101 F.3d 519, 524-25 (7th Cir. 1996) held that the plaintiff's work-related stress and anxiety was not a disability under the ADA. *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1174-75 (10th Cir. 1997) held that supervisor-induced depression and anxiety did not entitle plaintiff to disability leave under the ADA. *Gaul v. Lucent Technologies Inc.*, 134 F.3d 576 (3rd Cir. 1998) held that plaintiff's work-related anxiety disorders did not entitle him to an ADA claim.

ORDER – 4

suggesting the degree of abnormality or substantial limitations required to support a cognizable legal claim. Accordingly, the Court DISMISSES Plaintiff's Fourth Cause of Action.

B.  *Wrongful Termination in Violation of Public Policy*

Wrongful termination in violation of public policy is a narrow exception to the employment-at-will doctrine, and to state a claim under this tort, Plaintiff must point to a clear and applicable mandate of public policy. *Anica v. Wal-Mart Stores, Inc.*, 84 P.3d 1231, 1239-40 (Wash. 2004).[2] Where a plaintiff's complaint fails to point to a clear mandate of public policy, the court should dismiss the cause of action for failure to state a claim. *See, e.g., Roe v. Quality Transp. Servs.*, 838 P.2d 128 (Wash. 1992) (dismissing public policy discharge claim under Rule 12(b)(6) where plaintiff's complaint failed to establish clear mandate of public policy). Allegations of public policy violations must be based on some specific source, such as a statute, regulation, constitutional provision, or judicial decision. *Boring v. Alaska Airlines, Inc.*, 97 P.3d 51 (Wash. 2004).

Plaintiff alleges three ways in which she was wrongfully terminated in violation of public policy. First, Plaintiff alleges that Defendant violated established public policy by discharging her for seeking medical attention for illnesses caused by her employment. Plaintiff's failure to identify any statute, regulation, constitutional provision, or court decision from which public policy arises results in insufficient support for a wrongful discharge claim. *Vargas v. State*, 65 P.3d 330, 333-34 (Wash. Ct. App. 2003) (affirming dismissal of public policy claim that was "based on vague public policy mandates not clearly reflected in the law").

Plaintiff further claims that Defendant violated established public policy by discharging her "for being absent during her lunch hour, which said absence was a result of her seeking medical attention for illness caused by her employment." Amended Complaint ¶ 23. Plaintiff identifies Title 51 of the Revised

---

[2]In *Gardner v. Loomis Armored, Inc.*, 913 P.2d 377, 382 (Wash. 1996), the Washington State Supreme Court set forth 4 elements that a plaintiff must prove to succeed in a claim for wrongful discharge in violation of public policy. The first element requires the plaintiff to prove the existence of a clear mandate of public policy, and whether or not this element is satisfied is a question of law. *Id* at 380.

ORDER – 5

Code of Washington, the Industrial Insurance Act, as a source of public policy. However, because job-related stress is not covered by the Industrial Insurance Act,³ Plaintiff has failed to make a cognizable legal claim.

Plaintiff also alleges that Defendant further violated established public policy by terminating her for a perceived disability. However, because Plaintiff cannot establish disability discrimination under WLAD, WLAD cannot be used to support a public policy claim. *See, e.g., Sedlacek v. Hillis*, 36 P.3d 1014, 1021 (Wash. 2001) (where plaintiff was not protected by Washington or federal disability discrimination statutes, plaintiff could not rely on those statutes as basis for public policy wrongful discharge claim); *Griffith v. Boise Cascade, Inc.*, 45 P.3d 589, 594 (Wash. Ct. App. 2002) (where plaintiff failed to establish disability discrimination under WLAD, her public policy wrongful discharge claims "necessarily fail as well").

Accordingly, Plaintiff's First Cause of Action for wrongful termination in violation of public policy fails to state a claim for which relief can be granted, and the Court hereby DISMISSES this claim.

C.   Outrage

Plaintiff alleges that Defendant's actions were "extreme and outrageous and done intentionally or recklessly to inflict emotional distress upon plaintiff." Amended Complaint ¶ 44. Under Washington law, to establish a prima facie case for a claim of outrage, plaintiffs must plead and prove: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Dicomes v. State*, 782 P.2d 1002, 1013 (Wash. 1989). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.; see also, Humble v. Boeing Co.,* 305 F.3d 1004, 1012 (9th Cir. 2002). "Whether conduct is sufficiently outrageous is ordinarily a question for the jury. Initially, however, it is the trial court's responsibility to

---

³Wash. Admin. Code § 96-14-300 provides that "[c]laims based on mental conditions or mental disabilities caused by stress . . .[resulting from] [c]onflicts with a supervisor . . . [do] not fall within the definitions of an occupational disease."

ORDER – 6

determine if reasonable minds could differ about whether the conduct was so extreme as to result in liability." *Seaman v. Karr*, 59 P.3d 701, 710 (Wash. Ct. App. 2002).

Plaintiff has not pleaded sufficient facts to establish the first element of this tort. Plaintiff alleges that her supervisor made derogatory remarks regarding Plaintiff's race and Jewish heritage. However, vague allegations of "insults and indignities" will not sustain a claim of outrage without further factual support of the remarks being extreme and outrageous. *Dicomes*, 782 P.2d at 1013. Plaintiff also alleges that her supervisor aggressively shouted at her and abruptly hung up the phone after firing her. As set forth in Plaintiff's Amended Complaint, Defendant's conduct does not sink to the level of indecency required for a claim of outrage. Plaintiff's factual allegations are insufficient to support this claim. Plaintiff's Sixth Cause of Action must therefore be DISMISSED.

III.  CONCLUSION

In accordance with the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Dismiss is GRANTED;

2. Plaintiff's First, Second, Third, Fourth, and Sixth Causes of Action in the First Amended Complaint are DISMISSED WITH PREJUDICE;

3. Plaintiff is directed to SHOW CAUSE why this Court should retain jurisdiction over her remaining claim. Plaintiff's response is due within twenty (20) days of entry of this order.

SO ORDERED this _26th_ day of July 2005.

UNITED STATES DISTRICT JUDGE

ORDER – 7